JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OK HEE PARK, Individually, and on Behalf of the Class and Sub-Class,<br><br>                              Plaintiff,<br><br>          v.<br><br>AXA EQUITABLE LIFE INSURANCE COMPANY, a New York Corporation; EQUITABLE FINANCIAL LIFE INSURANCE COMPANY, a New York Corporation; and DOES 1-10, inclusive,<br><br>                              Defendants. | Case No. 8:22-cv-00761-SPG-DFM<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 32]** |

Before the Court is Defendant Equitable Life Insurance Company's motion for summary judgment. (ECF No. 32). The Court heard oral argument on December 7, 2022. Having considered the parties' submissions, the relevant law, the record in this case, and the arguments of counsel during the hearing on the motion, the Court **GRANTS** Defendant's Motion for Summary Judgment.

# I.    BACKGROUND

## A.    Factual Background

The following summarized facts are uncontroverted, unless otherwise stated.  *See* (ECF No. 32-4 (Joint Appendix of Facts "JAF")).[1]

On June 7, 1988, Equitable Variable Life Insurance Company[2] issued Policy No. 38 231 266 (the "Policy") insuring the life of Chop W. Park (the "Owner").  (JAF 1, 4). Plaintiff Ok Hee Park is the beneficiary of the Policy.  (JAF 5).  The Policy had an initial face value of $100,000 and was later re-issued at an amount of $97,975 after the Owner made a withdrawal in 1992.  (JAF 6, 8).  The Policy allowed the Owner to make premium payments in any amount he chose so long as the payments sufficiently covered deductions for the cost of insurance and other fees.  (JAF 11).  The Policy also contained a "Grace Period" provision, which provided that if the net cash surrender value at the beginning of a month is less than the deductions required for that month, Defendant will notify the Owner that a grace period of 61 days has begun.  (JAF 14).  The notice will include the payment required to maintain the Policy.  (*Id.*).  If Defendant does not receive the stated amount by the end of the grace period, the Policy will terminate without value.  (*Id.*).

Beginning on July 7, 1988, Defendant received monthly premium payments of $70.00.  (JAF 15, 16).  Defendant received those payments until October 2019.  (JAF 16). On November 7, 2019, the Policy's net cash surrender value was not sufficient to cover the

---

[1] When determining a motion for summary judgment, the Court only considers evidence admissible at trial, though the form may differ at the summary judgment stage.  *Godinez v. Alta-Dena Certified Dairy LLC*, No. CV 15-01652 RSWL (SSx), 2016 WL 6915509, at *3 (C.D. Cal. Jan. 29, 2016).  The Court has reviewed the entire record, including the parties' SUF, objections, and evidence.  The Court discusses only the facts that are relevant to its decision.  To the extent that the Court relies on evidence that is the subject of an objection, the Court overrules the objection.  To the extent the Court does not rely on evidence objected to by the parties, the objections are overruled as moot.

[2] On January 1, 1997, Equitable Variable Life Insurance Company merged with AXA Equitable Life Insurance Company, and on June 15, 2020, became known as Equitable Financial Life Insurance Company (collectively, "Defendant").  (JAF 2-3).

monthly deductions.  (JAF 17).[3]  The Owner passed away on November 21, 2021.  (JAF 28).  On May 23, 2022, Defendant issued a payment of $95,236.23 to Plaintiff.  (JAF 77, 80).

### B.     Procedural History

Plaintiff commenced this case on February 28, 2022, in the Superior Court of Orange County, California.  (ECF No. 1).  Plaintiff brings the following four causes of action individually and on behalf of a putative class: (1) declaratory judgment, (2) breach of contract; (3) unfair competition under California Business and Professions Code Section 17200, (4) financial elder abuse, and (5) bad faith.

On April 1, 2022, Defendant removed the case to this Court pursuant to diversity jurisdiction under 28 U.S.C. § 1332.  (*Id.*).  On November 9, 2022, Defendant filed a motion for summary judgment, which Plaintiff in the parties' joint brief opposes.  (ECF No. 32-1 ("MSJ")).  On November 16, 2022, Defendant filed a reply in support of its MSJ.  (ECF No. 37 ("Def. Reply")).[4]  The Court held a hearing on December 7, 2022.  (ECF No. 39 (the "December 7 Hearing")).

---

[3] The parties dispute whether the Owner received correspondence sent by Defendant on November 7, 2019, notifying the Owner that he must submit a minimum payment of $777.00 by January 7, 2020, or else the Policy would terminate without value.  For purposes of deciding Defendant's motion for summary judgment, the Court need only consider material facts that may affect the outcome of the case.  For the reasons stated herein, the Court finds the issue of whether Plaintiff received the notice to be immaterial to its decision.

[4] The parties submitted two requests for judicial notice in connection with the MSJ.  (ECF Nos. 34, 38).  Specifically, Plaintiff requests the Court to take notice of an order in a California state court case, *McHugh v. Protective Life Insurance Co.*, and a California Insurance Commissioner Bulletin 2021-8.  (ECF No. 34).  Defendant requests the Court to take notice of a filing in *Adams v. State Farm Life Ins. Co.*, No. 3:20-cv-4817, ECF No. 43 (N.D. Cal. Dec. 27, 2021).  The Court grants the parties' respective requests because the documents "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *See* Federal Rules of Evidence 201; *see also Reyna Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (holding that it is appropriate to take judicial notice of court filings and other matters of public record such

## II.    LEGAL STANDARD

Summary judgment is appropriate where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007). To meet its burden, "[t]he moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos*., 210 F.3d 1099, 1106 (9th Cir. 2000). Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). Instead, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)). There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.*

## III.    DISCUSSION

Defendant moves for summary judgment on each of Plaintiff's causes of action. Plaintiff objects to Defendant's motion to the extent it goes beyond the scope of the Court's

---

as pleadings, briefs, memoranda, motions, and transcripts filed in the underlying and related litigation).

scheduling order. (MSJ at 13, 41). Specifically, Plaintiff claims that Defendant's argument regarding Plaintiff's UCL cause of action seeking restitution goes beyond what Defendant told the Court in the parties 26(f) report that it would raise in its dispositive motion. (*Id.*). During the December 7 Hearing, counsel for Defendant argued that the parties' 26(f) report contemplated a forthcoming dispositive motion that would resolve Plaintiff's claims in their entirety. The Court agrees with Defendant. In the parties' joint 26(f) report, Defendant stated its intent to file "an early dispositive motion seeking judgment in its favor based on, *inter alia*, the chronology and payment of Plaintiff's claim for benefits." (ECF No. 20 at 6). Defendant further noted that "its forthcoming motion will resolve and/or render moot Plaintiff's claims." (*Id.* at 7). The Court thereafter entered a scheduling order allowing the parties to complete a limited scope of discovery and allowing Defendant to file a dispositive motion on the claim-related issues. (ECF No. 22). When the Court raised this issue with the parties at the December 7 Hearing, Plaintiff's counsel objected to Plaintiff's motion in its entirety as procedurally improper but failed to explain why Plaintiff's claim for restitution falls outside the scope of the parties' joint 26(f) report. Therefore, the Court will consider Defendant's motion for summary judgment in its entirety.

### A.    Whether Plaintiff Received the Full Benefits Owed Under the Policy

The Court will first decide whether Plaintiff received the full amount of benefits available under the Policy because this issue affects each of Plaintiff's claims. Defendant argues that $95,236.23 covers the full amount owed under the Policy. Defendant submits a declaration and deposition testimony from Muni Bhambri, a Senior Manager in Defendant's Client Relations department. (ECF No. 32-2 ("JAE") at 43). According to Mr. Bhambri, "[t]he amount paid to Plaintiff comprised the Policy's death benefit, plus applicable interest, less the amount of premiums that would have been required to keep the Policy in force through the Owner's date of death, November 21, 2021." (*Id.* ¶ 46; JAF 78). Mr. Bhambri also testified in his deposition that $95,236.23 represents the amount

that would have been paid to Plaintiff had the Policy not lapsed.[5] (JAF 79; JAE at 38:13-18).

Plaintiff disagrees, contending that $95,236.23 does not represent the full Policy benefits for two reasons. First, Plaintiff argues the Policy "does not give Equitable the right to deduct unpaid premiums from benefits." (*Id.* at 29). Second, Plaintiff argues that Equitable "failed to follow California law in calculating interest." (*Id.* at 30). The Court addresses each in turn.

Beginning with Plaintiff's first argument, the evidence plainly contradicts Plaintiff's assertion that the Policy does not allow Defendant to deduct past due premiums. The Policy provides that Defendant will pay the insurance benefits "*minus any overdue deductions* if the insured person dies during the grace period." (JAE at 61 (emphasis added)). Plaintiff offers no support for her argument, which is also contrary to the weight of authority recognizing that premiums operate as consideration for life insurance policies, without which there could be no policy. *See, e.g.*, *McHugh v. Protective Life Ins. Co.*, 12 Cal. 5th 213, 233, 494 P.3d 24, 36 (2021) (holding that "the insurer would be entitled to deduct the unpaid premium payment from any life insurance benefits it pays out"); *Bentley v. United of Omaha Life Ins. Co.*, 371 F. Supp. 3d 723, 740-41 (C.D. Cal. 2019) ("*Bentley II*") (finding the plaintiff was entitled to death benefits less any unpaid premiums).[6] Moreover, Plaintiff's dispute as to whether the Owner died during the grace period or if the Policy

---

[5] The parties dispute whether the Owner was either in the grace period when he died or if the Policy had lapsed. If the latter, the Policy would have been deemed terminated without value and Defendant would not owe any benefits to Plaintiff. However, because Defendant paid the Policy's benefits as though it had not lapsed, the Court need not consider this issue.

[6] Plaintiff cites *Korbholz v. Great-W. Life & Annuity Ins. Co.*, No. 03-03792 JSW, 2009 WL 159869 (N.D. Cal. Jan. 20, 2009) for the proposition that past due premiums are not automatically owed by a policy owner seeking revival of a policy. (MSJ at 29). In *Korbholz*, the court found that the plaintiff "should not be required to pay back premiums as a condition of reinstatement" of a life insurance policy. 2009 WL 159869, at *3. *Kobholz* is readily distinguishable because here Defendant has not requested Plaintiff to pay back premiums, nor has Plaintiff requested to reinstate the Policy. Defendant merely deducted unpaid premiums from the benefits pursuant to the terms of the Policy.

had lapsed is irrelevant because Defendant paid the full amount owed as if the Policy had not lapsed. (JAF 79). Indeed, the receipt from Defendant's payment of $95,236.23 reflects a calculation of benefits with a subtraction of unpaid premiums beginning in October 2019. (JAE at 222). Plaintiff nevertheless contends the calculation is incorrect because the receipt shows a termination date of January 7, 2020, instead of the date the Owner died, November 21, 2021. (MSJ at 30). However, because the Owner did not pay any premiums after October 2019, (JAF 16), the resulting net payment would be the same regardless of when the Policy terminated. Therefore, the Court finds that Defendant rightfully and accurately deducted unpaid premiums from the benefits paid to Plaintiff.

Turning to Plaintiff's second argument, the Court agrees with Defendant that the interest rate was correct. The Policy provides that interest on proceeds will be "not less than the greater of (a) the rate we are paying on the date of payment under the Deposit Option on Page 18, or (b) the rate required by any applicable law." (JAE at 62). Page 18 of the Policy guarantees interest at "3% per year." (*Id.* at 74). The evidence shows that Defendant paid interest on the Policy proceeds at 3% from the date of Owner's death to the date of payment. (JAE at 223). Nevertheless, Plaintiff argues that Defendant failed to follow California law, including insurance code section 10172.5.[7] Plaintiff does not, however, point to any evidence in support of her assertion that 3% interest was incorrect. Because Defendant has satisfied its burden at summary judgment, as the nonmoving party Plaintiff may not simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita*, 475 U.S. at 586. Plaintiff argues Defendant used the wrong interest rate

---

[7] Section 10172.5(a) provides in relevant part: "Notwithstanding any other provision of law, each insurer admitted to transact life insurance . . . in this state that fails or refuses to pay the proceeds of, or payments under, any policy of life insurance issued by it within 30 days after the date of death of the insured shall pay interest, at a rate not less than the then current rate of interest on death proceeds left on deposit with the insurer computed from the date of the insured's death, on any moneys payable and unpaid after the expiration of the 30-day period."

because the "parties did not stipulate to the use of a particular interest rate in case of breach." (MSJ at 30). Again, Plaintiff misreads the Policy, which expressly stipulates to the use of a 3% interest rate. *See* (JAE at 74 ("We guarantee interest under the Deposit Option at the rate of 3% a year")). Plaintiff also argues that the interest rate is incorrect because the Policy requires the use of, at minimum, the rate used by the insurer on proceeds left on deposit. (MSJ at 30). Defendant has shown, however, that the Policy's specified interest rate of 3% is consistent with Insurance Code section 10172.5, which requires insurers "to pay at least the same interest rate that they paid to their depositors during the period in which the life insurance benefits were past due." *Burton v. Prudential Ins. Co. of Am.*, 669 F. App'x 829 (9th Cir. 2016). *See Bentley II*, 371 F. Supp. 3d at 741 (finding that, under California Insurance Code section 10172.5, the policies' specified interest rates of one or three percent applied to the payment of policy benefits rather than the ten percent breach of contract rate that plaintiff sought because the policies so specified); (Def. Reply at 8 n.2). Plaintiff has not argued otherwise, and any unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. Accordingly, the Court finds that Defendant's use of the contracted-for interest rate of 3% is accurate under the law.

In sum, there is no genuine dispute of fact as to whether $95,236.23 comprises the full amount of benefits available to Plaintiff under the Policy, including interest. Accordingly, the Court finds that Defendant paid Plaintiff the maximum amount owed under the Policy.

## B.    Breach of Contract

Defendant argues that Plaintiff's breach of contract claim fails as a matter of law because Plaintiff received the full amount of benefits available under the Policy and therefore suffered no damages, a required element for a breach of contract claim. (MSJ at 24). As explained above, the Court agrees with Defendant that $95,236.23 represents the

full amount owed to Plaintiff under the Policy. The Court must therefore determine whether Plaintiff may recover more than that amount.[8]

To state a claim for breach of contract, the plaintiff must establish: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). "A breach of contract without damage is not actionable." *Patent Scaffolding v. William Simpson Constr. Co.*, 256 Cal. App. 2d 506, 511 (1967); *see also Bramalea Cal., Inc. v. Reliable Interiors, Inc.*, 119 Cal. App. 4th 468, 473 (2004) (same). When the contract at issue involves life or disability insurance, California law limits the measure of liability and damage to "the sum or sums payable in the manner and at the times as provided in the policy to the person entitled thereto." Cal. Ins. Code. § 10111. "[W]hen the proceeds of, or payments under, a life insurance policy become payable and the insurer makes payment thereof in accordance with the terms of the policy, . . . that payment shall fully discharge the insurer from all claims under the policy. . .." Cal. Ins. Code § 10172. Moreover, damages for contractual breach, where the only obligation was to pay money, are limited to "the amount due by the terms of the obligation, with interest thereon." Cal. Civ. Code § 3302. "When the interest is defined by contract, it is controlling." *US Bank Nat'l Ass'n v. PHL Variable Ins. Co*., No. CV 12-3046-RGK (MRWx), 2012 WL 12895839, at *2 (C.D. Cal. Nov. 29, 2012) (citing Cal. Civ. Code § 3289(a) ("Any legal rate of interest stipulated by contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation.")).

---

[8] Plaintiff's arguments regarding Defendant's purported violations of California's insurance claims regulations are immaterial to the Court's analysis of Plaintiff's breach of contract claim because whether Defendant violated those statutes does not affect the outcome of Plaintiff's breach of contract claim. Because Plaintiff did not suffer damages, her claim fails as a matter of law. *See Bramalea*, 119 Cal. App. 4th at 473.

Here, Defendant already paid Plaintiff the maximum amount, inclusive of interest, recoverable under California law—$95,236.23. Plaintiff therefore may not recover additional monetary damages under the breach of contract claim. *See US Bank*, 2012 WL 12895839, at *2 (finding that where "Defendant paid the death benefits plus the contractually agreed upon interest of three percent in full," the "Plaintiff has not suffered any contractual damages from Defendant's breaches"); *Azami v. Ohio Nat'l Life Assurance Corp.*, No. 5:19-cv-02504 MCS (SPx), 2021 WL 4100103, at *7 (C.D. Cal. Feb. 23, 2021) (dismissing plaintiff's breach of contract claim because the insurance company already paid the full death benefit plus interest). Accordingly, the Court grants Defendant's motion for summary judgment as to Plaintiff's breach of contract cause of action.

## C. Declaratory Judgment

The Declaratory Judgment Act permits district courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Under federal and California law, an actual controversy must exist for courts to issue declaratory relief. *Id.*; Cal. Civ. Pro. § 1060. "The decision to grant declaratory relief is a matter of discretion, even when the court is presented with a justiciable controversy." *United States v. State of Wash.*, 759 F.2d 1353, 1356 (9th Cir. 1985) (citations omitted). Actions for declaratory relief must be "carefully limited in scope to meet the 'case and controversy' requirements of Article III of the Constitution." *Pac. Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1414 (9th Cir. 1990) (citations omitted). California courts have declined to find an "actual controversy" where a "money judgment will fully resolve the dispute" and there is "no possibility of future dispute" between the parties. *Cardellini v. Casey*, 181 Cal. App. 3d 389, 396 (1986). "A federal court cannot issue a declaratory judgment if a claim has become moot." *Pub. Utilities Comm'n of State of Cal. v. FERC*, 100 F.3d 1451, 1459 (9th Cir. 1996).

Here, Plaintiff requests numerous judicial declarations despite there being no actual controversy or possibility of future dispute with Defendant. For example, Plaintiff seeks a declaration that Defendant's violation of California Insurance Code provisions voids any

attempts to terminate Defendant's policies and declarations requiring Defendant to include certain provisions in its policies. *See* (Compl. ¶¶ 72-76). However, Plaintiff lacks standing to pursue those requests.[9] "'[A]llegations of past injury alone are not sufficient to confer standing' to pursue a declaratory judgment." *Corley v. FedEx Ground Package Sys. Inc.*, No. 5:19-cv-00429-ODW (SHKx), 2022 WL 1805435, at *5 (C.D. Cal. June 2, 2022) (quoting *Leu v. Int'l Boundary Comm'n*, 605 F.3d 693, 694 (9th Cir. 2010)). Plaintiff no longer has any contractual relationship with Defendant after receiving a payment of $95,236.23, which satisfied in full any contractual monetary obligation it owed to Plaintiff under the Policy. Thus, declaratory relief is unavailable because no "actual controversy" exists. *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017) (confirming no standing to pursue declaratory relief when "parties have no relationship beyond this litigation" and plaintiff "produced no evidence to show the conduct complained of in this action presently affects him or can reasonably be expected to affect him in the future").

Plaintiff also requests a judicial declaration that California Insurance Code Sections 10113.71 and 10113.72 apply to all of Defendant's life insurance policies. (Compl. ¶ 71; MSJ at 26). That request has been rendered moot by *McHugh v. Protective Life Ins. Co.*, 12 Cal. 5th 213 (2021), which held that "sections 10113.71 and 10113.72 apply to all life insurance policies in force when these two sections went into effect, regardless of when the policies were originally issued." 12 Cal. 5th at 220; *see Moriarty v. Am. Gen. Life Ins. Co.*, No. 3:17-CV-1709-BTM-WVG, 2022 WL 2959560, at *4 (S.D. Cal. July 26, 2022). Accordingly, the Court grants defendant's motion for summary judgment as to Plaintiff's cause of action for declaratory judgment.

---

[9] Plaintiff's request for declaratory relief fails for the additional reason that Defendant's Policy already contains the contractual provision Plaintiff seeks. Indeed, Plaintiff requests "a judicial determination that any life insurance policy must contain a 60-day grace period in the written contract." (Compl. ¶ 75). Yet it is undisputed that the Policy has a grace period provision in compliance with Plaintiff's request. (JAF 14; JAE at 64).

### D.    Unfair Competition Law

California's Unfair Competition Law prohibits "unfair competition," which it defines to include "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200 ("UCL"). Liability under Section 17200 is derivative of violations of other laws and the UCL makes such unlawful practices independently actionable. *Cal– Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 180 (1999). Remedies available to private plaintiffs under the UCL "are generally limited to injunctive relief and restitution." *Id.* at 179. "In the insurance context, allegations that are essential to plead a claim for violation of the UCL are: (1) plaintiff's status as an insured or intended beneficiary of the insurance policy, (2) the existence of the policy, (3) the insurer's conduct and that such conduct was an unfair, unlawful or fraudulent business practice in violation of Bus. & Prof. Code § 17200, (4) plaintiff has no adequate remedy at law, (5) a request for injunctive relief and or restitution (monetary damages are not recoverable under the UCL), and (6) a request for attorney's fees." *Bentley v. United of Omaha Life Ins. Co.*, No. CV 15-7870-DMG (AJWx), 2016 WL 7443189, at *6 (C.D. Cal. June 22, 2016) ("*Bentley I*") (citing *Heighley v. J.C. Penney Life Ins. Co.,* 257 F. Supp. 2d 1241, 1259 (C.D. Cal. 2003)).

Here, Defendant argues that Plaintiff's UCL claim fails because Plaintiff cannot recover either type of relief permitted under the UCL.

#### 1.    Restitution

In general, an adequate legal remedy precludes a party from seeking equitable relief. *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 381 (1992) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." (internal quotation marks and alterations omitted)). Accordingly, because a claim brought under the UCL is equitable in nature, damages may not be recovered. *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1144 (2003). Courts have expressly found that the payment of policy benefits are "damages" and therefore not recoverable under the UCL.

*See Bentley I*, 2016 WL 7443189, at *6 (C.D. Cal. June 22, 2016) (collecting cases and dismissing plaintiff's UCL claim for restitution based on an alleged violation of the insurance statutes at issue because the claim was based upon withheld policy benefits and was encompassed by breach of contract claim seeking proceeds under the policy).

Here, Plaintiff seeks restitution under the UCL for (1) unrefunded premiums, (2) withheld benefits, and (3) diminution of value of policies." (Compl. ¶ 94). Defendant argues Plaintiff is not entitled to restitution because Plaintiff received the entire value of what was paid for under the Policy, there is no evidence the Policy's value was diminished, and there is no evidence that Defendant's purported unfair business practices induced Plaintiff to make premium payments. (MSJ at 28-29). The Court agrees.

First, regarding Plaintiff's request for unrefunded premiums, the premiums Owner paid constituted the consideration for the Policy. Plaintiff thus is not entitled to refunds of already-paid premiums because they served as the sole consideration in exchange for the Policy. *See Benn v. Allstate Ins. Co.*, 569 F. Supp. 3d 1029, 1037 (C.D. Cal. 2021) (denying claim for restitution, reasoning that if the defendant "were forced to return its premiums, there would be no consideration for the insurance policy to exist" because "payment of a premium constitutes the consideration for the policy" (internal quotation marks and alterations omitted)).

Second, for the reasons stated above, Plaintiff has not shown that Defendants withheld benefits under the Policy. Moreover, courts have found requests for restitution "by which an insured seeks payment of benefits is, in effect, a claim for monetary damages, and, consequently, not cognizable under the UCL." *Cook v. State Farm Gen. Ins. Co.*, No. 21-CV-02458-MMC, 2022 WL 1225016, at *2 (N.D. Cal. Apr. 26, 2022); *see also Benn*, 569 F. Supp. 3d at 1037. Therefore, Plaintiff may not seek restitution in the form of purportedly withheld benefits.

Third, regarding Plaintiff's request to be compensated for the Policy's purported diminished value, Plaintiff asserts that she "purchased a policy with certain protections and features . . . but ultimately received a policy with fewer." (MSJ at 43). At this stage in the

proceedings, Plaintiff must come forward with specific facts showing that the Policy and payment of the full benefits owed thereunder were less valuable than what the Owner bargained for. *See* Fed. R. Civ. P. 56(e). However, Plaintiff has failed to cite any evidence to support her claim that the Policy somehow diminished in value. Plaintiff offers nothing more than speculation that the Policy, which was paid out in full, was worth less because of Defendant's purported failure to follow applicable insurance cancelation statutes. Yet as the nonmoving party, Plaintiff may not continue to rely on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita*, 475 U.S. at 586. Accordingly, the Court finds that Plaintiff's claim for restitution cannot survive summary judgment.[10]

2. <u>Injunctive Relief</u>

A plaintiff seeking to obtain injunctive relief must establish that he or she is realistically threatened by a repetition of the violation to establish that the relief sought would redress the alleged injuries. *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006). Here, Defendant argues that Plaintiff lacks standing because the alleged UCL violations (failure to comply with California's statutory notice requirements) "already occurred" and

---

[10] Plaintiff cites to two cases, *Tavakolian v. Great Am. Life Ins. Co.*, No. EDCV 20-1133 JGB (SHKx), 2022 WL 1200043 (C.D. Cal. Apr. 7, 2022) *Nieves v. United of Omaha Life Ins. Co.*, No. 3:21-CV-01415-H-KSC, 2022 WL 432726 (S.D. Cal. Feb. 11, 2022), to argue that dismissal is improper here. (MSJ at 33). Both are distinguishable. First, both decisions addressed motions to dismiss rather than motions for summary judgment. *See, e.g.*, *Tavakolian*, 2022 WL 1200043, at *3 ("[Defendant's] arguments are premature and better addressed on a motion for summary judgment when the record is more developed."). Second, both cases involved insurers implementing changes to still-active life insurance policies that resulted in new policies with different features allegedly causing them to be worth less than the previous policies without those features. *See id.* (alleging the policy was worth less with a new "forced reinstatement" provision); *Nieves*, 2022 WL 432726, at *7 (alleging the reinstated policy was "worth less in value because of the new contestability policy"). Here, in contrast, Plaintiff does not provide any evidence, let alone allege, that Defendant made any changes to the Policy that diminished its value from what Plaintiff bargained for. Moreover, unlike in *Nieves* and *Tavakolian*, Defendant already paid Plaintiff the full amount owed under the Policy.

will not occur again. (MSJ at 45). The Court agrees. Because the Policy is no longer in effect and Plaintiff already received the proceeds, there are no ongoing unlawful practices that Plaintiff may enjoin. *See Bentley I*, 2016 WL 7443189, at *7 ("Because the Policy has lapsed, there is no ongoing need for injunctive relief"); *Benn*, 569 F. Supp. 3d at 1035; *McAdam v. State Nat. Ins. Co.*, No. 12CV1333 BTM MDD, 2012 WL 4364655, at *2 (S.D. Cal. Sept. 24, 2012) (dismissing UCL claim with prejudice partly because plaintiff's policy had expired before the suit was filed).

Plaintiff's arguments in opposition are unavailing. Plaintiff contends that, even if she will not suffer future harm, there is a likelihood of future harm to the putative class members. However, class-wide injunctive relief is not available unless Plaintiff herself, as the named plaintiff, is entitled to seek injunctive relief. Plaintiff cites *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) for support. (MSJ at 48). However, as Defendant points out, *Armstrong* holds that "[w]hen a named plaintiff asserts injuries that have been inflicted upon a class of plaintiffs, we may consider those injuries in the context of the harm asserted by the class as a whole, to determine whether a credible threat *that the named plaintiff's injury will recur has been established*." 275 F.3d at 861 (*abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005)). In other words, showing a likelihood of future harm to other class members is simply a means for Plaintiff to show that she, too, will experience future harm. The Ninth Circuit has made clear that Plaintiff cannot, however, rest her entire argument on the likelihood of future harm to the class; Plaintiff still must demonstrate that she herself will experience future harm. *See Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) (rejecting argument that "plaintiffs . . . , and the class they seek to represent, should be able to seek an injunction based on the likelihood of future injury [solely] to unnamed class members"). Moreover, Plaintiff's argument that showing a policy or pattern of breaking the law may satisfy the "future harm" requirement fares no better because Plaintiff has offered no evidence or specific facts to show a policy

or pattern exists, as is her burden.  Accordingly, the Court grants Defendant's motion for summary judgment as to Plaintiff's claim for injunctive relief under the UCL.[11]

### E.    Bad Faith

A bad faith claim asserts a breach of the implied covenant of good faith and fair dealing that proximately caused actual damages.  *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161, 1164 (9th Cir. 2002).  This implied covenant imposes a duty on the insurer "not to withhold unreasonably payments due under a policy."  *Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 920 (1978) (citation omitted).  "When the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort." *Maslo v. Ameriprise Auto & Home Ins.*, 227 Cal. App. 4th 626, 633 (2014) (quoting *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720 (2007)).  "The key to a bad faith claim is whether or not the insurer's denial of coverage was reasonable."  *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001).  Thus, "an insurer may breach the covenant of good faith and fair dealing when it fails to properly investigate its insured's claim."  *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 817 (1979).  The inquiry focuses on the "reasonableness of the insurer's conduct under the facts of the particular case," and the analysis "must be evaluated in light of the totality of the circumstances surrounding its actions."  *Wilson*, 42 Cal. 4th at 723.  It is "settled law in California that an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." *Chateau Chamberay Homeowners Ass'n v. Assoc. Int'l Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001).

---

[11] Plaintiff requests that the Court remand Plaintiff's UCL claim rather than dismiss for lack of jurisdiction.  (MSJ at 48 n.9).  However, Plaintiff provides no support for her assertion that the Court should not consider the merits of Plaintiff's UCL claim. Accordingly, the Court denies Plaintiff's request to remand her UCL claim to state court.

Here, Defendant argues that Plaintiff's bad faith claim fails because Defendant did not withhold benefits and any purported delay in paying the benefits was not unreasonable. (MSJ at 49). The first date Defendant could have known of the Owner's death was December 14, 2021. (JAF 29, 30). On May 9, 2022, Defendant informed Plaintiff of its decision to pay the benefits owed under the Policy, (JAF 73), and Defendant issued the payment to a trust account on May 23, 2022. (JAF 74-77). The Court therefore must determine whether Defendant's approximately five-month delay from December 14, 2021, to May 9, 2022, was unreasonable.

Although the parties dispute the precise series of events between December 14, 2021, and May 9, 2022, including when Defendant was on notice of the Owner's death, the record indisputably shows that Defendant's delay was reasonable under the circumstances. An insurer is not obligated to pay a claim "until it [can] find out on its own, to a measure of certainty," that the benefits are owed. *Blake v. Aetna Life Ins. Co.*, 99 Cal. App. 3d 901, 924 (1979); *see also Maynard v. State Farm Mut. Auto. Ins. Co.*, 499 F. Supp. 2d 1154, 1160 (C.D. Cal. 2007) ("delay while the insurer seeks information and investigates the insured's claim" does not give rise to liability for bad faith). During the December 14, 2021, phone call from Donna Kim, the daughter of Plaintiff and the Owner, Defendant told Ms. Kim that the Policy was not in force but declined to provide additional information regarding the Policy. (JAF 31, 32). That same day, Ms. Kim emailed a letter to Defendant indicating that the Owner did not receive notice that the Policy had lapsed and informing Defendant that the Owner had died. (JAF 39; JAE at 101). Defendant processed the letter as an inquiry about the status of the Policy. (JAF 41).[12] At that time,

---

[12] Plaintiff argues Defendant treated the letter as a claim, rather than correspondence. (Plaintiff's response to JAF 41). Plaintiff cites Defendant's record of the interaction history regarding the Policy. (*Id.* (citing JAE at 194)). However, the cited record does not show that Defendant treated Ms. Kim's letter as a death claim on December 14, 2021. Instead, it merely shows that Defendant recorded the correspondence as a "Contribution Inquiry." (JAE at 194). This is further substantiated by Mr. Bhambri's deposition testimony. (JAE

-17-

Defendant did not process the letter as a death claim partly because Plaintiff did not submit the death claim paperwork. (JAF 43). On January 10, 2022, because the letter inquired about automatic premium deductions, Defendant's billing and collections department began its investigation. (JAF 49). On January 21, 2022, the billing department concluded that the net cash surrender value was insufficient to cover monthly deductions as of November 7, 2019, and transferred the inquiry to the death claims department. (JAF 51). On February 14, 2022, the death claims department confirmed the Policy was recorded as lapsed and transferred the matter to the client relations department for further review. (JAF 52-54). Two days later, on February 16, 2022, Defendant notified Plaintiff that it would continue to review the death claim. (JAF 56-57). Plaintiff then initiated this lawsuit on February 28, 2022. (JAF 58, ECF No. 1-1). As a result, Defendant suspended its research until May 4, 2022, when it decided to resume and, based on its additional review of the record, decided to pay the proceeds to Plaintiff. (JAF 59-62; JAE at 24-25). According to Mr. Bhambri, the decision to pay Plaintiff was based on the circumstances surrounding the lapse of the Policy and the apparent misunderstandings with Owner and Ms. Kim. (JAF 64, 65).

Based on the Court's review of the evidence in the light most favorable to the nonmoving party, the Court finds Defendant did not act in bad faith when it promptly investigated Plaintiff's death claim before paying Plaintiff the full amount of benefits under the Policy approximately five months after it was first unofficially notified of Owner's death. *See, e.g.*, *Lincoln Benefit Life Co. v. Fundament*, No. 8:18-cv-260, 2019 WL 1199025 (C.D. Cal. Mar. 12, 2019) (13-month-delay between notice of death and claim payment was objectively reasonable where insurer investigated to confirm fact of death); *DeFrenza v. Progressive Express Ins. Co.*, 345 F. Supp. 3d 1243, 1253-55 (E.D. Cal. 2017) (11-month delay between notice of claim and the insurer's settlement offer did not support

---

at 20-21 (testifying that the December 14 letter was "not a complaint"; it was "deemed as correspondence")).

bad faith claim).    Here, no reasonable juror could conclude that Defendant acted unreasonably in carrying out its investigation of Plaintiff's claim before paying the maximum amount recoverable under the Policy.    Accordingly, the Court grants Defendant's motion for summary judgment as to Plaintiff's cause of action for bad faith.

### F.    Financial Elder Abuse

A claim based on financial abuse under the Elder Abuse Act requires a showing that a person or entity: (1) "takes, secretes, appropriates, obtains, or retains real or personal property" (2) of an elder or dependent adult; (3) for wrongful use or with intent to defraud or both or (4) assist in such taking.   Cal. Welf. & Instit. Code § 15610.30(a)(1)-(a)(2). "Courts in this district have found that, where a plaintiff has pleaded bad faith breach of an insurance contract, 'the pleaded facts [alleging bad faith], taken in light of the breadth of the statutory language, [can] support a claim under the Elder Abuse Act.'"  *Interiano v. Colonial Life & Accident Ins. Co.*, 460 F. Supp. 3d 945, 958 (C.D. Cal. 2020) (quoting *Crawford v. Cont'l Cas. Ins. Co.*, No. SA-CV-1400968-CJC-JCGx, 2014 WL 10988334, at *2 (C.D. Cal. July 24, 2014)).   In other words, a claim for elder abuse in this circumstance "stands and falls on the trier of fact's finding that [the insurer] denied [p]laintiff's valid claim in bad faith."  *Johnston v. Allstate Ins. Co.*, No. 13-CV-574-MMA BLM, 2013 WL 2285361, at *4 (S.D. Cal. May 23, 2013); *Keshish v. Allstate Ins. Co.*, No. CV 12-03818 MMM (JCx), 2012 WL 12887077, at *6 (C.D. Cal. July 30, 2012).   As discussed above, Defendant has shown that its five-month delay in paying Plaintiff the full benefits under the Policy was not in bad faith.   Therefore, as a matter of law, Plaintiff's elder abuse claim fails.  *See Interiano*, 460 F. Supp. 3d at 958-59.

### G.    Whether the Putative Class Claims Survive

Plaintiff argues that Defendant's payment in full of the Policy's proceeds should preclude granting summary judgment in Defendant's favor because Plaintiff has brought her claim both individually and on behalf of a putative class.  (MSJ at 15, 33-34).  Plaintiff relies on *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1148 (9th Cir. 2016) to argue that Defendant cannot "pick off" the named representative to evade review of Plaintiff's

putative class claims.  Defendant responds that *Chen* is inapposite because there the defendant made an "offer of judgment" in "full settlement" of the plaintiff's claims, whereas here Defendant merely paid the proceeds under the Policy without any conditions attached and did not consent to any judgment.  (Def. Reply at 14 (quoting *Chen*, 819 F.3d at 1139-40)).

In *Chen*, after the plaintiff brought a class action against defendant for monetary and injunctive relief under the Telephone Consumer Protection Act ("TCPA"), the defendant deposited $20,000 into an escrow account, agreed to the requested injunction, and moved to dismiss the case as moot.  819 F.3d at 1138.  The Ninth Circuit held the case was not moot because the named plaintiff did not receive "complete relief" on his TCPA claim.  *Id.* at 1144.  The court defined complete relief as "all of the relief [a plaintiff] could receive on the claim through further litigation."  *Id*.  To determine what that entailed, the court looked to the relief plaintiff sought in the operative complaint.  *Id*. at 1142.  The plaintiff's complaint requested statutory damages and injunctive relief.  *Id*.

The court then compared the defendant's escrow deposit and injunction agreement to plaintiff's requested relief.  *Id*. at 1144.  The court held that defendant's agreement mooted plaintiff's request for injunctive relief, though the escrow deposit did not moot the claim for damages because the plaintiff did not actually receive the funds.  *Id*. at 1146.  The Ninth Circuit went on to state that even if "the district court were to enter judgment providing complete relief on [the plaintiff's] individual claims for damages and injunctive relief before class certification, fully satisfying those individual claims, [the plaintiff] still would be entitled to seek certification."  *Id*.  This is because the Ninth Circuit had previously held that where a defendant engages in a tactic of "picking off" lead plaintiffs to avoid a class action, the named plaintiff's claim is "transitory in nature and may otherwise evade review" such that dismissing for mootness is inappropriate.  *Id*. at 1142-43 (citing *Pitts v. Terrible Herbst, Inc*., 653 F.3d 1081, 1091 (9th Cir. 2011)); *see also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016) (holding that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case").  The Ninth Circuit

explained that "[w]hen a named plaintiff has requested class certification and class relief in its complaint, but has not yet had a reasonable opportunity to file a motion seeking class certification, an offer of individual relief should not be considered to be a tender of all relief requested in the complaint." *Id*. at 1148.

Following *Chen*, courts in the Ninth Circuit have declined to dismiss cases as moot with facts similar to this case. For example, in *Davis v. United States*, No. 16-CV-06258-TEH, 2017 WL 1862506 (N.D. Cal. May 9, 2017), the named plaintiffs in a putative class action sought "a determination of the amount of retroactive military retired pay to which they were entitled, as well as actual payment of such pay." *Id*. at *1. After the complaint was filed, the defendant sent checks to both plaintiffs for the amounts that defendant had determined were due. *Id*. at *1-2. The defendant then argued the case was moot and attempted to distinguish *Chen* by arguing that the plaintiffs in *Davis* had received actual relief, not only an offer of relief. *Id*. at *3. Relying on the Ninth Circuit's decision in *Pitts*, the court rejected this argument and held that the plaintiffs must be allowed to seek class certification even if their individual claims were satisfied. *Id*. (finding the "transitory nature of Plaintiffs' claims warrants an exception to the general mootness doctrine").

Here, the Court finds *Pitts*, *Chen*, and its progeny to be distinguishable. Plaintiff's claims in this case have not been rendered moot by Defendant's payment. *Cf. id.*; *T. K. v. Adobe Sys. Inc*., No. 17-CV-04595-LHK, 2018 WL 1812200, at *11 (N.D. Cal. Apr. 17, 2018) (finding that, "even if [plaintiff's] claims were moot, under *Chen* and *Pitts*, the Court would not dismiss based on mootness before [Plaintiff] has the opportunity to seek class certification"). Instead, Plaintiff's claims fail for independent reasons, including *inter alia* Plaintiff's failure to meet the required elements for a breach of contract cause of action, lack of standing because of failure to show likelihood of future harm, and failure to show Defendant engaged in bad faith. Furthermore, Defendant's payment did not necessarily evade the Court's review of the class claims because it did not offer all the relief to which Plaintiff could be entitled under the operative complaint—including, for example,

injunctive and declaratory relief.  Accordingly, *Pitts* and *Chen* do not prevent the Court from granting Defendant's motion for summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment.

**IT IS SO ORDERED.**

DATED:  January 11, 2023

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE